UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LAVAZZA PREMIUM COFFEES CORP.
and LUIGI LAVAZZA S.P.A.,

                              Plaintiffs,

              -v.-

PRIME LINE DISTRIBUTORS INC.,

                              Defendant.

20 Civ. 9993 (KPF)

**OPINION AND ORDER**

---

KATHERINE POLK FAILLA, District Judge:

This case instantiates the breakdown of the commercial relationship between two coffee manufacturers, Plaintiffs Lavazza Premium Coffees Corp. ("Lavazza") and Luigi Lavazza S.p.A. ("Luigi"), and a Florida-based coffee distributor, Defendant Prime Line Distributors Inc.  Plaintiffs brought this action for breach of contract; contributory trademark infringement and unfair competition; and several related tort claims.  Defendant has moved to dismiss the Complaint for (i) lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and (ii) failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6).  Alternatively, Defendant has moved to transfer this case to the Southern District of Florida pursuant to 28 U.S.C. § 1404.  For the reasons that follow, the Court finds that it has personal jurisdiction over Defendant with respect to all of Plaintiffs' claims and declines to transfer the case.  Furthermore, while the Court grants Defendant's motion to dismiss Lavazza's claims for (i) account stated and

(ii) tortious interference with contract, it denies the motion as to all other claims alleged in the Complaint.

## BACKGROUND[1]

### A.    Factual Background

#### 1.    The Parties

Lavazza is a Delaware corporation whose principal place of business is in New York, New York.  (Compl. ¶ 4).  Luigi is an Italian company whose principal place of business is in Turin, Italy.  (*Id.* at ¶ 5).  Defendant is a Florida corporation whose principal place of business is in Fort Lauderdale, Florida.  (*Id.* at ¶ 6).

---

[1]    This Opinion draws its facts primarily from the Complaint (Dkt. #1), the well-pleaded allegations of which are taken as true for the purposes of this Opinion.  The Court also considers: (i) the Declaration of Dennis Landi in support of Defendant's motion to dismiss ("Landi Decl." (Dkt. #29-1)) and the exhibits attached thereto, including the April 10, 2017 Distribution Agreement (the "Agreement" (*id.*, Ex. 1)); (ii) the Declaration of Iris Velasquez submitted in opposition to Defendant's motion to dismiss ("Velasquez Decl." (Dkt. #36)); and (iii) the Declaration of Alfredo D'Innocenzo submitted in opposition to Defendant's motion to dismiss ("D'Innocenzo Decl." (Dkt. #37)).

On a motion to dismiss, the Court may consider any statements or documents incorporated by reference in the Complaint, documents that are "integral" to the Complaint even if they are not incorporated by reference, and matters of which judicial notice may be taken.  *See Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).  A document is integral to the complaint "where the complaint relies heavily upon its terms and effect."  *Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Chambers*, 282 F.3d at 153).  As the Complaint "relies heavily" on the Agreement, the Court finds that the Agreement is integral to the Complaint.  *See id.* (observing that "[i]n most instances" where courts deem a document "integral to the complaint," "the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls" (quoting *Glob. Network Commc'ns, Inc.* v. *City of New York*, 458 F.3d 150, 157 (2d Cir. 2006))).

For ease of reference, the Court refers to Defendant's memorandum of law in support of its motion to dismiss as "Def. Br." (Dkt. #29); Plaintiffs' memorandum of law in opposition to Defendant's motion to dismiss as "Pl. Opp." (Dkt. #35); and Defendant's reply memorandum as "Def. Reply" (Dkt. #40).

### 2.     The Distribution Agreement

On April 10, 2017, Lavazza and Defendant entered into a Distribution Agreement (the "Agreement").  (Compl. ¶ 9; *see also* Agreement).  Pursuant to the Agreement, Defendant received the right to sell Lavazza's coffee and other products throughout Florida.  (Agreement § 1.1).  Defendant would place purchase orders with Lavazza for espresso, coffee, and tea (*id.* at § 1.2), and then resell the products to restaurants, hotels, cafés, and coffee shops (*id.* at Art. 2; *see also* Compl. ¶ 11).  Defendant could place two types of purchase orders: container orders, which Lavazza fulfilled by shipping products from Italy to Defendant (Agreement § 3.1; Compl. ¶ 24), and warehouse orders, which Lavazza fulfilled by shipping products from its domestic warehouse to Defendant (Agreement § 3.1; Compl. ¶ 25).  To facilitate Defendant's marketing and sale of Lavazza's products, Defendant also received a nonexclusive sublicense to use Luigi's trademarks.  (Agreement § 8.1).

In exchange for the rights it received under the Agreement, Defendant made several promises.  First and foremost, Defendant agreed to pay for the products it purchased from Lavazza within 75 days of receiving an invoice for them.  (Agreement § 3.3).  Defendant also opted to participate in Lavazza's equipment loan program, which provided coffee machines to customers on the condition that the customers use the machines exclusively to serve Lavazza coffee.  (*Id.* at §§ 10.1, 10.3; *see also* Compl. ¶ 13).  Relatedly, Defendant promised to notify Lavazza if Defendant learned that a third party was infringing on Luigi's trademarks (Agreement § 8.5), or was using Lavazza's

loaned equipment to serve a competitor's coffee (*id.* at § 10.3).  Finally, Defendant agreed not to disclose certain confidential information related to Lavazza's financial and business affairs.  (*Id.* at §§ 12.1-12.2).

The Agreement also contained two clauses that would govern in the event that litigation arose between the parties.  The first clause was a forum-selection clause, which provided that "[t]he parties hereby consent to the exclusive jurisdiction of the State and Federal Courts located in New York County in any action arising out of, or connected in any way with this Agreement, and each party consents to personal jurisdiction of, and venue in such courts in any such matter." (Agreement § 16.2).  The second clause was a choice-of-law provision, which stated that "[t]his Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to principles of conflict of laws." (*Id.* at § 16.1).

### 3.   Defendant's Alleged Misconduct and Breaches of the Agreement

Plaintiffs allege that, both prior to and following the Agreement's expiration, Defendant engaged in a series of actions that violated the terms of the Agreement and undermined Plaintiffs' commercial reputation.  Defendant's alleged actions — which are detailed in the remainder of this section — include: (i) failing to pay for products it purchased from Lavazza; (ii) marketing and selling competitors' coffee products to customers that it knew had equipment loan agreements with Lavazza; (iii) contributing to customers' service of competing coffee products in circumstances that led consumers to mistakenly believe that they had purchased Lavazza's products; (iv) removing,

unilaterally and without Lavazza's knowledge or permission, Lavazza's equipment from customers' premises; (v) spreading damaging lies about Lavazza's pricing strategies during the height of the COVID-19 pandemic; and (vi) divulging Lavazza's confidential information.

*First*, Defendant failed to pay outstanding invoices for past orders and belated cancellations of container orders. (Compl. ¶¶ 52-57). In late July 2020, for instance, Defendant failed to pay $438,638.64 for products it purchased under the Agreement. (*Id.* at ¶ 54). Around the same time, Defendant also canceled multiple container orders on short notice, forcing Lavazza to incur $14,336 in unreimbursed costs to divert the container shipments from Florida to Lavazza's warehouse in New York. (*Id.* at ¶ 55).

*Second*, Defendant "engaged in a coordinated effort to market and sell competitor coffee products to customers using Lavazza" equipment, despite knowing that these customers had entered into equipment loan agreements with Lavazza. (Compl. ¶ 58; *see also id.* at ¶¶ 59-69). In furtherance of this effort, Defendant improperly marketed competitors' products to a restaurant in Key West, Florida; a resort and spa in Naples, Florida; a hotel in Gainesville, Florida; and a bakery in West Palm Beach, Florida — all of whom had entered into equipment loan agreements with Lavazza. (*Id.* at ¶¶ 62-63). As a result of Defendant's actions, several restaurants in Florida and the Caribbean stopped purchasing and using Lavazza coffee and began to use competitors' coffee in their Lavazza coffee machines. (*Id.* at ¶ 65).

*Third*, as Defendant pursued its coordinated effort to sell competitors' coffee products to customers who had entered into loan agreements with Lavazza, it continued to supply Lavazza-branded coffee mugs and other Lavazza promotional materials to those same customers. (Compl. ¶¶ 73-74; *see also id.* at ¶¶ 70-82). By selling both competitors' coffee and Lavazza-branded mugs and promotional materials, Defendant led its customers to serve competitors' coffee in Lavazza-branded coffee cups and in view of Lavazza-branded signs. (*Id.* at ¶¶ 75-78). Defendant's actions created confusion in the marketplace by inducing consumers to associate Luigi's trademarks with Lavazza's competitors' coffee products. (*Id.* at ¶¶ 78-79).

*Fourth*, following the expiration of the Agreement, Defendant removed, without Lavazza's authorization or knowledge, Lavazza's equipment from certain customers' premises and refused at a key period of time to provide Lavazza with the information needed to identify the customers whose equipment had been removed. (Compl. ¶ 83). For instance, in October 2020, Plaintiffs learned that Defendant had removed and taken possession of coffee equipment that Lavazza had loaned to a restaurant in Key West, Florida (*id.* at ¶ 89), and stored the equipment in one of its warehouses (*id.* at ¶ 83). Plaintiffs were notified that Defendant had also taken Lavazza's loaned equipment from a resort in Lake Buena Vista, Florida, a hotel in Doral, Florida, and numerous other customers. (*Id.* at ¶¶ 88-89). Defendant had, at one point, acquired 141 of Lavazza's coffee machines, which were kept idle in a warehouse. (*Id.* at ¶ 85). Defendant then inexplicably refused to disclose to

6

Lavazza the list of customers from whom it had taken equipment, preventing Lavazza from discovering which machines Defendant had taken.  (*Id.* at ¶ 83).

*Fifth*, and beyond the actions Defendant took with respect to individual customers, Defendant engaged in a broader campaign to damage Lavazza's commercial reputation by spreading false statements about Lavazza's pricing during the COVID-19 pandemic.  (*See* Compl. ¶¶ 92, 102).  On multiple occasions in July and August 2020, Defendant falsely asserted that Lavazza had raised the prices of its products and then attacked Lavazza for doing so during the COVID-19 pandemic.  (*Id.* at ¶¶ 93, 102).  In July 2020, Defendant distributed a list of price increases to its "Valued Customers" that falsely represented that Defendant had "received an increase from Lavazza Coffee effective July 1st 2020," and that this was "the third increase [Defendant] received in just under 1 year."  (*Id.* at ¶ 94).  In truth, Lavazza had not increased its prices during this period; rather, Defendant had on its own accord raised the price it charged for Lavazza's coffee.  (*Id.*).

Defendant made several additional false representations to customers that Lavazza had increased its prices between July and August 2020.  (*See* Compl. ¶¶ 97-99).  In July 2020, Defendant told its customers that Lavazza was increasing its prices by 25%.  (*Id.* at ¶ 97).  In an August 2020 letter published to Defendant's Florida-based customers, Defendant stated that "[b]etween August 2019 and May 2020, Lavazza imposed four significant price increases for its [p]roducts" and claimed that "Lavazza's conduct was outrageous; particularly under the most challenging environment that perhaps

7

any of us have ever worked." (*Id.* at ¶ 95). And in an August 2020 statement to a bakery in West Palm Beach, Florida, Defendant stated that Lavazza had raised its prices by 35%. (*Id.* at ¶ 99). Defendant's statements "have been circulated so broadly that they have prompted inquiries from news publications seeking to verify [Defendant's] claims." (*Id.* at ¶ 100). These false claims have also damaged Lavazza's commercial reputation (*id.* at ¶¶ 101-102) and led it lose more than 100 customers and market share in Florida (*id.* at ¶¶ 102, 110).

*Sixth* and finally, Defendant disclosed Lavazza's confidential information. As referenced above, Lavazza fulfilled two types of orders under the Agreement: container orders and warehouse orders. (Compl. ¶ 23). Lavazza fulfilled container orders by shipping products from Italy directly to Defendant (*id.* at ¶ 24), and warehouse orders by shipping products from one of its domestic warehouses to Defendant (*id.* at ¶ 25). Container orders take more time to fulfill and cost more. (*Id.* at ¶¶ 24-26). In furtherance of its effort to undermine Lavazza's competitive position, Defendant disclosed the price differential between the two types of orders, revealing Lavazza's cost of doing business to its customers and competitors. (*Id.* at ¶ 107).

In all, Plaintiffs allege that Defendant's actions have caused them significant harm. Defendant has failed to pay $452,974.64 for products it purchased under the Agreement (Compl. ¶ 57); deprived Lavazza of the use of coffee machines it had loaned to customers (*id.* at ¶ 91); and caused Lavazza to lose more than 100 customers, suffer harm to its reputation, and incur damages of more than $1.5 million annually (*id.* at ¶¶ 110-112). Luigi,

8

meanwhile, has seen its trademarks used to sell competitors' coffee, causing customer confusion and damage to its goodwill and reputation. (*Id.* at ¶ 160).

**B.    Procedural Background**

Plaintiffs filed the Complaint in this case on November 27, 2020. (Dkt. #1). On February 23, 2021, Defendant filed a pre-motion letter stating that it intended to file a motion to dismiss the Complaint and requesting a conference to discuss its anticipated motion. (Dkt. #17). Plaintiffs filed their opposition to Defendants' pre-motion letter on March 9, 2021. (Dkt. #20). The following day, the Court granted Defendant's request for a conference and stated that it would discuss Defendant's anticipated motion at the initial pretrial conference scheduled for March 17, 2021. (Dkt. #21).

At the initial pretrial conference, the Court set a briefing schedule for Defendant's motion to dismiss. (*See* Minute Entry for March 17, 2021). Pursuant to the briefing schedule, Defendant's opening motion was due on April 16, 2021; Plaintiffs' opposition on May 17, 2021; and Defendant's reply on June 4, 2021. (*Id.*). Defendant filed its motion on April 16, 2021. (Dkt. #28-29). On May 13, 2021, Plaintiffs requested an extension of the time to file their opposition to Defendant's motion (Dkt. #32), which the Court granted the next day (Dkt. #33). On May 24, 2021, Plaintiffs filled their opposition to Defendant's motion. (Dkt. #35-37). Defendant requested an extension of its time to file a reply on June 10, 2021 (Dkt. #38), and the Court granted the request the next day (Dkt. #39). Defendant filed its reply on June 25, 2021.

(Dkt. #40).  Accordingly, Defendant's motion is fully briefed and ripe for decision.

## DISCUSSION

**A.    The Court Denies Defendant's Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(2)**

### 1.    Applicable Law

On a motion to dismiss for lack of personal jurisdiction brought pursuant to Federal Rule of Civil Procedure 12(b)(2), "the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *DiStefano* v. *Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (quoting *Bank Brussels Lambert* v. *Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)).  "A plaintiff must establish the court's jurisdiction with respect to each claim asserted[.]" *Charles Schwab Corp.* v. *Bank of Am. Corp.*, 883 F.3d 68, 83 (2d Cir. 2018) (internal quotation marks omitted).  At this early stage of the litigation, Plaintiffs "need only make a *prima facie* showing of personal jurisdiction over the defendant." *Porina* v. *Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008); *accord One Techs., LLC* v. *Amazon.com, Inc.*, 860 F. App'x 785, 786 (2d Cir. 2021) (summary order).  When evaluating whether Plaintiffs have met their burden at this stage, "the Court may look beyond the four corners of the complaint and consider materials outside of the pleadings, including accompanying affidavits, declarations, and other written materials." *Vasquez* v. *Hong Kong & Shanghai Banking Corp., Ltd.*, 477 F. Supp. 3d 241, 245 n.1 (S.D.N.Y. 2020).  "The Court will 'construe all pleadings and affidavits in the light most favorable to the plaintiff and resolve all doubts in the

plaintiff's favor.'"  *Brownstone Inv. Grp. LLC* v. *Bonner & Partners, LLC*, No. 20 Civ. 7351 (AJN), 2021 WL 3423253, at *2 (S.D.N.Y. Aug. 5, 2021) (internal brackets omitted) (quoting *Penguin Grp. (USA) Inc.* v. *Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010)).

## 2.    Analysis

Defendant's primary argument under Rule 12(b)(2) is that the Complaint should be dismissed because the Court cannot exercise personal jurisdiction over it with respect to Luigi's trademark claims.  (Def. Br. 4-12; Def. Reply 1-9).[2]  Plaintiffs argue in opposition that the Court has personal jurisdiction over Defendant for all claims alleged in the Complaint for two reasons.  *First*, Plaintiffs contend that Defendant consented to personal jurisdiction in this Court by agreeing to the forum-selection clause contained in the Agreement. (Compl. ¶ 8; Pl. Opp. 4-11).  *Second*, Plaintiffs assert that Defendant's business activities in New York are sufficient to bring it within the reach of New York's long-arm statute.  (Pl. Opp. 11-15).  After reviewing the Complaint, the terms of the Agreement, and the declarations submitted by both parties, the Court finds that it has personal jurisdiction over Defendant with respect to all claims asserted in the Complaint.

---

[2]      Defendant suggests in its opening briefing that the Court could not exercise personal jurisdiction over it for any of the claims brought in the Complaint (*see* Def. Br. 1); it clarifies in its reply brief, however, that its jurisdictional arguments are primarily targeted at Luigi's trademark claims (*see* Def. Reply 1).

### a.   The Agreement's Forum-Selection Clause Confers Personal Jurisdiction over Defendant for Lavazza's Claims

The Court begins with Plaintiffs' argument that the Court has personal jurisdiction over Defendant for all of their claims by operation of the Agreement's forum-selection clause.  (Pl. Opp. 4-11).  "It is well established that 'parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements.'"  *NuMSP, LLC* v. *St. Etienne*, 462 F. Supp. 3d 330, 342 (S.D.N.Y. 2020) (quoting *D.H. Blair & Co.* v. *Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006)).  "Forum selection clauses have the salutary effect of dispelling any confusion about where suits arising from the contract must be brought and defended, sparing litigants the time and expense of pretrial motions to determine the correct forum and conserving judicial resources that otherwise would be devoted to deciding those motions."  *Magi XXI, Inc.* v. *Stato della Citta del Vaticano*, 714 F.3d 714, 722 (2d Cir. 2013) (internal quotation marks omitted).

Whether a forum-selection clause confers personal jurisdiction in a particular case is determined using a two-step framework.  At the first step, courts in the Second Circuit consider: "[i] whether the clause was reasonably communicated to the party resisting enforcement; [ii] whether the clause is mandatory or permissive, *i.e.*, whether the parties are required to bring any dispute to the designated forum or simply *permitted* to do so; and [iii] whether the claims and parties involved in the suit are subject to the forum selection clause."  *Martinez* v. *Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014) (internal

12

quotation marks and ellipses omitted).  "If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable."  *Banca Di Credito Cooperativo di Civitanova Marche e Montecosaro Soc. Cooperativa* v. *Small*, 852 F. App'x 15, 19 (2d Cir. 2021) (summary order).  At the second step of the framework, courts "ascertain whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching."  *Phillips* v. *Audio Active Ltd.*, 494 F.3d 378, 383-84 (2d Cir. 2007) (internal quotation marks omitted).

Here, Plaintiffs argue that Defendant consented to the Court's personal jurisdiction by agreeing to the Agreement's forum-selection clause.  (Pl. Opp. 3). As noted earlier, the forum-selection clause states that "[t]he parties hereby consent to the exclusive jurisdiction of the State and Federal Courts located in New York County in any action arising out of, or connected in any way with this Agreement, and each party consents to personal jurisdiction of, and venue in such courts in any such matter."  (Agreement § 16.2).  Defendant does not contest that it agreed to the forum-selection clause or that the clause is mandatory.  (*See* Def. Br. 4).  Instead, Defendant argues that the clause does not apply to Luigi's trademark claims because Luigi was not a party to the Agreement and its claims do not arise from the Agreement.  (*Id.* at 7-11).

Setting aside Luigi's claims for the moment, the Court easily finds that the Agreement's forum-selection clause confers jurisdiction over Defendant for

Lavazza's claims. Given Defendant's concession that the forum-selection clause was communicated to it and was mandatory, as well as its decision not to object to the application of the clause to Lavazza's claims, the Court finds that the forum-selection clause is presumptively enforceable. *See Atomi, Inc.* v. *RCA Trademark Mgmt., S.A.S.*, No. 14 Civ. 7456 (VEC), 2015 WL 1433229, at *2 (S.D.N.Y. Mar. 30, 2015) (finding an uncontested forum-selection clause to be presumptively enforceable). Further, given Defendant's related decision not to attempt to rebut the forum-selection clause's presumptive enforceability, the Court finds that the clause is enforceable. Accordingly, the Court finds that it has personal jurisdiction over Defendant for Lavazza's claims.

By contrast, the Court finds that the Agreement's forum-selection clause does not confer personal jurisdiction over Defendant for Luigi's trademark claims. As both sides agree, Luigi did not sign the Agreement. (Pl. Opp. 6-7; Def. Br. 8). And while "the fact a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause," *Aguas Lenders Recovery Grp.* v. *Suez, S.A.*, 585 F.3d 696, 701 (2d Cir. 2009), it is equally clear that a non-signatory can enforce a forum-selection clause in only a limited set of circumstances. "[O]nly when the 'non-signatory is "closely related" to a signatory,' may a non-signatory enforce the forum selection clause against another signatory." *Vuzix Corp.* v. *Pearson*, No. 19 Civ. 689 (NRB), 2019 WL 5865342, at *5 (S.D.N.Y. Nov. 6, 2019) (quoting *Magi XXI, Inc.*, 714 F.3d at 723). "Generally speaking, courts have found parties to be so 'closely related' that enforcement of a forum selection clause is 'foreseeable' in

two kinds of situations: where the non-signatory had an active role in the transaction between the signatories or where the non-signatory had an active role in the company that was the signatory." *Affiliated FM Ins. Co.* v. *Kuehne + Nagel, Inc.*, 328 F. Supp. 3d 329, 336 (S.D.N.Y. 2018) (internal quotation marks omitted).  Courts in this District have also found that "alter egos, corporate executive officers, and successors-in-interest …, at least in some instances, satisf[y] the 'closely related' test."  *Vuzix Corp.*, 2019 WL 5865342, at *5.

The parties dispute whether Luigi has sufficiently demonstrated that it is "closely related" to Lavazza such that Defendant could have reasonably foreseen Luigi's enforcement of the Agreement's forum-selection clause. Plaintiffs argue that Luigi should be permitted to enforce the forum-selection clause because its "interests are directly related to Lavazza's interests through Lavazza's sublicense of the Lavazza Trademarks."  (Pl. Opp. 7).  Plaintiffs draw their argument from the fact that, in signing the Agreement, Defendant "agreed that [Luigi] held the [t]rademark rights, that [Defendant] could not impair them at any time, and that it would maintain insurance for [Luigi] during the Agreement and eighteen months thereafter."  (*Id.* at 6-7).  From this contractual language, Plaintiffs argue that Luigi's enforcement of the forum-selection clause was "reasonably foreseeable."  (*Id.* at 7).

Defendant counters that it could not have foreseen Luigi's enforcement of the forum-selection clause because Luigi was not a party to the Agreement, was not involved in its negotiation or execution, and asserts claims that do not arise under it.  (Def. Br. 8-11).  On this last point, Defendant emphasizes that

15

Luigi's trademark claims arise under the Lanham Act, not the Agreement, because "Luigi's trademark, and its right to protect the mark, exist independent of the Agreement." (*Id.* at 10). Further, because Luigi's claims are not predicated on the Agreement, Defendant states that it could not have reasonably foreseen that Luigi would seek to use the Agreement's forum-selection clause to bring its claims in New York. (*Id.* at 8; Def. Reply 5-9).

After carefully reviewing both the Complaint and the declarations submitted in opposition to Defendant's motion, the Court finds that Plaintiffs have failed to demonstrate that Luigi and Lavazza are sufficiently "closely related" to allow Luigi to enforce the Agreement's forum-selection clause. Plaintiffs' sole allegation concerning Luigi's identity is that Luigi "is an Italian Company with its principal place of business" in Turin, Italy. (Compl. ¶ 5). This allegation provides no information about Luigi's relationship to Lavazza or about Luigi's role (or lack thereof) in negotiating and executing the Agreement. Plaintiffs' representations made in opposition to Defendant's motion are similarly silent on Plaintiffs' relationship, adding only that Luigi participated in the fulfillment of container orders. (*See* D'Innocenzo Decl. ¶¶ 20-25). As a consequence of Plaintiffs' sparse representations regarding Luigi, the Court cannot find on the record before it that Luigi and Lavazza are "closely related." *Cf. Melwani* v. *Amazon.com, Inc.*, No. 20 Civ. 9739 (AJN), 2021 WL 4429604, at *4 (S.D.N.Y. Sept. 27, 2021) (finding individual plaintiff and corporate entity "sufficiently closely related" for purposes of forum-selection clause where defendants "attached a declaration and supporting exhibits" detailing

16

individual's precise relationship with entity); *Miller* v. *Mercuria Energy Trading, Inc.*, 291 F. Supp. 3d 509, 524 (S.D.N.Y. 2018) (concluding, after careful analysis of relationships between and among several business entities, that such relationships were insufficiently close to permit enforcement of forum-selection clause), *aff'd*, 774 F. App'x 714 (2d Cir. 2019) (summary order).

Plaintiffs' reliance on the Agreement's licensing of Luigi's trademarks is unavailing. In broad strokes, Luigi alleges that Defendant committed contributory trademark infringement and unfair competition by selling Lavazza's coffee products to customers who it knew were infringing on Luigi's trademarks. (Compl. ¶¶ 145-161). To be sure, Luigi's trademark claims are related to the Agreement, which granted Defendant a nonexclusive license to use Luigi's trademarks. (Agreement § 8.1). Significantly, however, Luigi brings its trademark claims under Sections 32 and 43 of the Lanham Act, 15 U.S.C. §§ 1114, 1124, and not under the Agreement. (Compl. ¶¶ 145-161; *cf.* Pl. Opp. 7-8 (citing *Krist* v. *McGraw-Hill Sch. Educ. Holdings LLC*, No. 17 Civ. 8200 (LAP), 2019 WL 10960491, at *2 (S.D.N.Y. Jan. 4, 2019) (permitting defendant sublicensee to enforce forum-selection clause against non-signatory plaintiff where plaintiff's claims were "derivat[ive] of and depend on" the sublicensing agreement))). And the mere fact that Luigi's claims bear some relationship to the Agreement is insufficient to establish that Luigi is so "closely related" to Lavazza that Defendant could have foreseen Luigi's enforcement of the

Agreement's forum-selection clause.[3]  *See Mercuria Energy Trading, Inc.*, 291 F. Supp. 3d at 524 (declining to permit enforcement of forum-selection clause where non-signatory's "interests are not completely derivative of and directly related to, if not predicated upon, the signatory party's interests or conduct" (internal quotation marks omitted)); *cf. F5 Cap.* v. *RBS Sec. Inc.*, No. 14 Civ. 1469 (VLB), 2015 WL 5797019, at *6 (D. Conn. Sept. 30, 2015) (finding a sufficiently close relationship between signatory and non-signatory where non-signatory was "wholly-owned subsidiary of" signatory and defendant alleged "coordinated conduct" between the two parties), *aff'd*, 692 F. App'x 66 (2d Cir. 2017) (summary order).  Absent more specific allegations demonstrating Luigi's close relationship with Lavazza, the Court cannot find that Luigi is permitted to enforce the forum-selection clause.  Accordingly, the Court finds that the Agreement's forum-selection clause does not confer personal jurisdiction over Defendant for Luigi's trademark claims.

> ### b.   New York's Long-Arm Statute Confers Personal Jurisdiction over Defendant for Luigi's Trademark Claims

Luigi argues in the alternative that the Court has personal jurisdiction over Defendant with respect to Luigi's trademark claims under New York's long-arm statute.  (Pl. Opp. 11-15).  "In order to defeat a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a *prima facie* showing that:

---

[3]    As discussed in the following section, however, the relationship of Luigi's claims to the Agreement *is* sufficient to implicate personal jurisdiction over Defendant pursuant to New York's long-arm statute, contained at Civil Practice Law and Rules ("C.P.L.R.") § 302(a)(1), which employs a more holistic and less rigid standard.

(i) a New York statute allows the defendant to be haled into court; and

(ii) exercising personal jurisdiction over the defendant is consistent with due

process." *Ahmed* v. *Purcell*, No. 14 Civ. 7491 (KPF), 2016 WL 1064610, at *6

(S.D.N.Y. Mar. 14, 2016) (internal citations omitted).  In contrast with its

finding with respect to the Agreement's forum-selection clause, the Court finds

here that Luigi has made a *prima facie* showing that its trademark claims fall

within New York's long-arm statute and that the Court's exercise of personal

jurisdiction over Defendant for these claims is consistent with due process.

### i.  Statutory Basis

New York's long-arm statute provides, in relevant part, that "a court may

exercise personal jurisdiction over any non-domiciliary … who in person or

through an agent transacts any business within the state," so long as the

plaintiff's cause of action arises from that transaction.  C.P.L.R. § 302(a)(1).

"To determine the existence of jurisdiction under [S]ection 302(a)(1), a court

must decide [i] whether the defendant transacts any business in New York and,

if so, [ii] whether this cause of action arises from such a business transaction."

*Best Van Lines, Inc.* v. *Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (internal

quotation marks and alterations omitted); *accord Jean-Louis* v. *Carrington*

*Mortg. Servs., LLC*, 849 F. App'x 296, 300 (2d Cir. 2021) (summary order).

A court evaluates whether the defendant transacted any business in New

York by considering a variety of factors, including:

> (i) whether the defendant has an on-going contractual
> relationship with a New York corporation; (ii) whether
> the contract was negotiated or executed in New York
> and whether, after executing a contract with a New York

> business, the defendant has visited New York for the
> purpose of meeting with parties to the contract
> regarding the relationship; (iii) what the choice-of-law
> clause is in any such contract; and (iv) whether the
> contract requires franchisees to send notices and
> payments into the forum state or subjects them to
> supervision by the corporation in the forum state.

*Agency Rent A Car Sys., Inc.* v. *Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir.
1996) (internal citations omitted); *accord Rosenblatt* v. *Coutts & Co. AG*, 750 F.
App'x 7, 10 (2d Cir. 2018) (summary order).  The factors are not exclusive, and
no single factor is dispositive.  *Agency Rent A Car Sys., Inc.*, 98 F.3d at 29.

If the defendant transacted business in New York, the court must then
"inquire whether the plaintiffs' claims arise from that transaction."  *Licci ex rel.
Licci* v. *Lebanese Canadian Bank, SAL*, 673 F.3d 50, 66 (2d Cir. 2012).  "This
inquiry is a fact-specific one[.]"  *Id.* at 67.  "New York courts have held that a
claim 'arises from' a particular transaction when there is some articulable
nexus between the business transacted and the cause of action sued upon, or
when there is a substantial relationship between the transaction and the claim
asserted."  *Best Van Lines, Inc.*, 490 F.3d at 249 (internal quotation marks and
brackets omitted); *accord Rosenblatt*, 750 F. App'x at 12.

Here, Luigi has made out a *prima facie* case of personal jurisdiction
under New York's long-arm statute.  *First*, Luigi alleges that Defendant engaged
in numerous intrastate business activities in New York, including:
(i) negotiating the Agreement (D'Innocenzo Decl. ¶ 7); (ii) attending several
meetings related to the Agreement (*id.* at ¶¶ 12-15); and (iii) sending purchase
orders, checks, and sales reports to Lavazza (*id.* at ¶¶ 16-19).  Moreover,

Defendant agreed to both a New York forum-selection clause and a New York choice-of-law provision. (Agreement §§ 16.1, 16.2). Defendant's business activities in New York go well beyond the "single act" required by the state's long-arm statute. *See Chloe* v. *Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 168 (2d Cir. 2010) ("[S]ection 302 is a 'single act statute' and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." (internal quotation marks omitted)); *see also ADYB Engineered for Life, Inc.* v. *Edan Admin. Servs. Ltd.*, No. 19 Civ. 7800 (MKV), 2021 WL 1177532, at *10 (S.D.N.Y. Mar. 29, 2021) (finding similar allegations sufficient to satisfy New York's long-arm statute's transact-business prong).

*Second*, Luigi has also adequately demonstrated that its trademark claims are substantially related to Defendant's business activities in New York. As alleged, Defendant negotiated the Agreement in New York. (D'Innocenzo Decl. ¶ 7). By the terms of the Agreement, Defendant "acknowledge[d] the exclusive right, title and interest of Lavazza and [Luigi] in and to the Lavazza Trademarks[.]" (Agreement § 8.3). In turn, Defendant received a nonexclusive license to use the trademarks (*id.* at § 8.1), and agreed not to "contest or in any way impair [Lavazza and Luigi's] right, title and interest" in the trademarks (*id.* at § 8.3). Luigi alleges that, following the Agreement's execution, Defendant contributed to the infringement of its trademarks by selling Lavazza's coffee products to customers who were infringing on Luigi's trademarks. (Compl.

21

¶¶ 145-161).  Although Luigi brings its claims under the Lanham Act rather than the Agreement, its claims are inextricably linked to Defendant's performance of the Agreement, including its sale of Lavazza coffee products and its distribution of Lavazza-branded coffee cups and other equipment bearing Luigi's trademarks.  (*See id.*).  Under the totality of these circumstances, the Court finds that Luigi's claims "arise from" Defendant's contacts with New York.  *See Sea Tow Servs. Int'l, Inc.* v. *Pontin*, 472 F. Supp. 2d 349, 360 (E.D.N.Y. 2007) (finding an "articulable nexus" between plaintiff's trademark claims and defendant's activities in New York because "although the alleged infringing conduct occurred in Florida, defendants had previously entered into and operated under a licensing agreement with a New York corporation, and the disputed validity of that agreement underlines plaintiff's trademark claims").

The Court's finding that Luigi's claims fall within the ambit of New York's long-arm statute is consistent with the Second Circuit's holding in *Sunward Electronics, Inc.* v. *McDonald*, 362 F.3d 17 (2d Cir. 2004).  In *Sunward*, a New York corporation brought trademark, breach of contract, and related claims against an Alabama corporation and two Alabama citizens.  *Id.* at 22. Notwithstanding the defendants' argument that the court lacked personal jurisdiction over them, the district court entered a preliminary injunction enjoining the defendants from using the plaintiff's trademarks.  *Id.*  On appeal, the defendants argued that the alleged infringement in Alabama did not confer personal jurisdiction over them for claims brought in a New York court.  *Id.*

22

The Second Circuit affirmed the district court's exercise of personal jurisdiction and specifically rejected the defendants' argument that "Plaintiff's cause of action does not 'arise' from New York transactions because the alleged trademark infringement occurred in Alabama, and only after their contract with Plaintiff expired." *Sunward Elecs., Inc.*, 362 F.3d at 23-24. Although the panel did not elaborate on its decision at length, it noted that New York's long-arm statute extends to claims sounding in tort, such as the trademark claims alleged by the plaintiff, and concluded that the district court's exercise of personal jurisdiction was appropriate because "Plaintiff's cause of action has a substantial relationship to [defendants'] transactions." *Id.* at 24.

The facts of this case are closely analogous to those in *Sunward*. Here, as in *Sunward*, Luigi argues that Defendant's infringement of its trademarks arises out of a licensing agreement that the parties negotiated and entered into in New York. (Pl. Opp. 9.) And here, as in *Sunward*, Defendant argues that personal jurisdiction does not lie in New York because the alleged infringement occurred across state lines. (Def. Br. 6.) Given the Second Circuit's holding that the exercise of personal jurisdiction is appropriate in materially similar circumstances, the Court finds there to be a statutory basis supporting its exercise of personal jurisdiction over Defendant for Luigi's trademark claims.

### ii.      Constitutional Basis

As previewed earlier, "[o]nce *a prima facie* showing of a statutory basis for jurisdiction has been made, the plaintiff must 'demonstrate that the exercise of personal jurisdiction comports with due process.'" *Giannetta* v. *Johnson*,

No. 20 Civ. 9016 (PAE), 2021 WL 2593305, at *5 (S.D.N.Y. June 24, 2021) (quoting *Charles Schwab Corp.*, 883 F.3d at 82). "The constitutional analysis under the Due Process Clause consists of two distinct inquiries: into 'minimum contacts' and 'reasonableness.'" *Id.* at *5.

The minimum contacts inquiry addresses the relationship of both (i) the defendant to the forum and (ii) the plaintiff's claim to the defendant's activities in the forum. A defendant has a sufficiently close relationship to the forum where it engaged in "some act by which it purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *Ford Motor Co.* v. *Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (internal brackets omitted). And the plaintiff's claims bear a sufficiently close relationship to the defendant's activities in the forum state where they "arise out of or relate to the defendant's contacts with the forum." *Bristol-Myers Squibb Co.* v. *Super. Ct. of Cal., S.F. Cnty.*, 137 S. Ct. 1773, 1780 (2017) (internal alterations omitted).

The reasonableness of the exercise of personal jurisdiction is evaluated by considering "whether the assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice — that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Chloe*, 616 F.3d at 164 (internal quotation marks omitted). When engaging in this analysis, the court must consider: "[i] the burden that the exercise of jurisdiction will impose on the defendant; [ii] the interests of the forum state in adjudicating the case; [iii] the plaintiff's interest in obtaining convenient and effective relief; [iv] the interstate judicial system's interest in

24

obtaining the most efficient resolution of the controversy; and [v] the shared interest of the states in furthering substantive social policies." *Id.*

Here, the Court's exercise of personal jurisdiction over Defendant with respect to Luigi's trademark claims is consistent with due process for many of the same reasons discussed above.  Luigi has adequately alleged that Defendant purposefully availed itself of New York by traveling to the state to negotiate and execute the Agreement (*See generally* D'Innocenzo Decl.), and that its claims bear a substantial relationship to Defendant's forum contacts because the claims relate to Defendant's performance under the Agreement. *See Sunward Elecs., Inc.*, 362 F.3d at 24 (finding exercise of personal jurisdiction under comparable circumstances to be consistent with due process); *see also Chloe*, 616 F.3d at 171 (concluding that the "assertion of personal jurisdiction over [defendant] comports with due process for the same reasons that it satisfies New York's long-arm statute").

Moreover, although neither side focuses on the issue in their briefing, the Court finds that its exercise of personal jurisdiction over Defendant with respect to Luigi's claims is reasonable as gauged by traditional notions of fair play and substantial justice.  Significantly, Defendant will already be required to litigate Lavazza's claims in this forum and under New York law.  The Court's retention of jurisdiction, which will require Defendant to defend against a second set of claims that relate to the same Agreement and pertain to the same pattern of alleged misconduct, will therefore impose a minimal burden on Defendant.  And the exercise of jurisdiction will promote judicial economy by

allowing Lavazza's and Luigi's interrelated claims to be resolved in a single proceeding before a court familiar with the governing legal standards.  Under these circumstances, the Court's exercise of personal jurisdiction over Defendant as to Luigi's trademark claims is consistent with due process. Accordingly, the Court denies Defendant's motion to dismiss for lack of personal jurisdiction.

**B.  The Court Denies Defendant's Motion to Transfer Venue Under 28 U.S.C. § 1404**

**1.  Applicable Law**

When presented with a motion to transfer venue under 28 U.S.C. § 1404, the Court must make two determinations.  "First, the Court must determine whether the prospective forum is one in which the action might have been brought."  *Knowles-Carter* v. *Feyonce, Inc.*, No. 16 Civ. 2532 (AJN), 2017 WL 11567528, at *9 (S.D.N.Y. Sept. 23, 2017) (internal quotation marks omitted). "Second, if the transferee forum meets the requirements at the first step, a court must determine whether to exercise its discretion to effect the transfer." *Id.*  Generally, at this second step, the Court considers the following non-exhaustive factors: "[i] the plaintiff's choice of forum, [ii] the convenience of witnesses, [iii] the location of relevant documents and relative ease of access to sources of proof, [iv] the convenience of parties, [v] the locus of operative facts, [vi] the availability of process to compel the attendance of unwilling witnesses, and [vii] the relative means of the parties."  *N.Y. Marine & Gen. Ins. Co.* v. *Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010).

The Court's "calculus changes when the parties' contract contains a valid forum-selection clause[.]" *ESI Cases & Accessories, Inc.* v. *Home Depot Prod. Auth., LLC*, No. 18 Civ. 11507 (JMF), 2019 WL 4256364, at *2 (S.D.N.Y. Sept. 9, 2019). In that situation, the parties have "waive[d] the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Atl. Marine Const. Co.* v. *U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 64 (2013). "Accordingly, a district court may consider arguments about public-interest factors only, which will rarely override the weight given to the parties' choice of forum." *Berkley Assurance Co.* v. *MacDonald-Miller Facility Sols., Inc.*, No. 19 Civ. 7627 (JPO), 2019 WL 6841419, at *4 (S.D.N.Y. Dec. 16, 2019), *reconsideration denied*, No. 19 Civ. 7627 (JPO), 2020 WL 1643866 (S.D.N.Y. Apr. 1, 2020) (internal quotation marks omitted). In short, a valid forum-selection clause "should be given controlling weight in all but the most exceptional cases." *Atl. Marine Const. Co.*, 571 U.S. at 63 (internal brackets omitted).

### 2. Analysis

Defendant moves to transfer this case to the Southern District of Florida. (Def. Br. 29-30). Because the Court's analysis under 28 U.S.C. § 1404 depends on whether a forum-selection clause is implicated, the Court begins by addressing Lavazza's claims, which are brought under a valid forum-selection clause, before turning to Luigi's, which are not. Ultimately, for the reasons stated below, the Court declines to transfer either Plaintiff's claims.

The Court addresses first whether transfer of Lavazza's claims is appropriate.  As discussed above, because Defendant consented to have Lavazza's claims heard in New York, the Court may consider only whether public-interest factors weigh in favor of transfer.  The Supreme Court has explained that such public-interest factors "may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law."  *Atl. Marine Const. Co.*, 571 U.S. at 63 n.6.  The Supreme Court has also cautioned that such factors will only "rarely" override the parties' choice of forum.  *Id.* at 63.

Here, Defendant has not identified any extraordinary public-interest factor that would allow the Court to override the parties' agreement to have claims arising out of the Agreement heard in New York.  Defendant argues that transfer is appropriate because both the witnesses and evidence relevant to Plaintiffs' claims are located in Florida.  (Def. Br. 29-30).  As a preliminary matter, such an argument "provide[s] … only weak support … because the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago."  *Bank Brussels Lambert* v. *Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129 (2d Cir. 2002) (internal quotation marks omitted).  Moreover, even accepting that litigating this case in New York will impose some burden on the parties and their witnesses, Defendant's argument is beside the point because the convenience of litigating in the forum is a private, not public, interest.  *See Nat'l Union Fire Ins. Co. of*

28

*Pittsburgh, Pa.* v. *Wynn Las Vegas, LLC*, 509 F. Supp. 3d 38, 51 (S.D.N.Y. 2020) (finding that the need to depose witnesses in Nevada is a private interest and is "irrelevant … given the presence of a valid and enforceable forum selection clause").  Because Defendant has not identified any public-interest factor sufficient to override the Agreement's forum-selection clause, the Court finds that transfer of Lavazza's claims is not appropriate under Section 1404.

The Court turns next to Luigi's claims.  Although the Agreement's forum-selection clause does not encompass Luigi's claims, "that does not render the clause irrelevant as to the remaining claims under the transfer analysis." *Androb Jewelry Serv., Inc.* v. *Malca-Amit USA, LLC*, No. 16 Civ. 5171 (AJN), 2017 WL 4712422, at *3 (S.D.N.Y. Sept. 25, 2017).  "The fact that some claims are clearly subject to the clause can weigh strongly in favor of" enforcing the forum-selection clause as to the entire action, "including the other claims — especially where all of the claims are factually interrelated." *Id.*  Here, the Court's retention of Lavazza's claims leads the Court also to retain Luigi's claims.  Lavazza's claims comprise the bulk of the ten counts alleged in the Complaint, and are factually intertwined with Luigi's claims.  Given that Lavazza's claims will be litigated before this Court, the Court finds that both the litigants' private interests and the broader public interests implicated under 28 U.S.C. § 1404 weigh against transfer of Luigi's claims.  *See id.* at *9 (concluding that circumstances in which valid forum-selection clause in favor of Queens County courts governed half of the claims and remaining claims were factually related to those claims "weigh[ed] strongly in favor of transfer" of

the entire action).  (*See* Def. Reply 10 (arguing that all the claims alleged in the Complaint should be heard together "to preserve judicial economy")). Accordingly, the Court denies Defendant's motion to transfer as to both Lavazza's and Luigi's claims.

### C.   The Court Grants in Part and Denies in Part Defendant's Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

#### 1.   Applicable Law

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), Plaintiffs must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  When evaluating the viability of Plaintiffs' claims, the Court must accept as true all well-pleaded factual allegations contained in the operative complaint.  *Id.*  Additionally, the Court may consider any written instrument attached to the complaint as an exhibit, any statements or documents incorporated by reference in the complaint, documents that are "integral" to the complaint even if they are not incorporated by reference, and matters of which judicial notice may be taken.  *See Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *see generally Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (discussing materials that may properly be considered in resolving a motion brought under Fed. R. Civ. P. 12(b)(6)).

### 2.     Analysis

Defendant moves to dismiss the Complaint on the basis that each of its
ten counts fails to state a claim.  (Def. Br. 24-36).[4]  For the reasons that follow,
the Court grants Defendant's motion with respect to Lavazza's claims for
(i) account stated and (ii) tortious interference with contract.  Conversely, the
Court denies Defendant's motion with respect to Plaintiffs' claims for (i) breach
of the Agreement's payment provision; (ii) breach of the Agreement's exclusive-
use provision; (iii) breach of the Agreement's confidentiality provision;
(iv) contributory trademark infringement; (v) unfair competition; (vi) conversion;
(vii) trespass to chattels; and (viii) defamation.

### a.     The Court Sustains Lavazza's Claims for Breach of Contract

The Court begins with Defendant's motion to dismiss Lavazza's claims for
breach of contract.  "Under New York law, which governs the Agreement, the
elements of a breach of contract claim are [i] the existence of a contract,
[ii] performance by the party seeking recovery, [iii] breach by the other party,
and [iv] damages suffered as a result of the breach."  *Morrison* v. *Buffalo Bd. of*

---

[4]     Defendant also argues that Federal Rule of Civil Procedure 8 mandates dismissal
because the Complaint "constitutes an improper 'shotgun pleading.'"  (Def. Br. 12).  The
Court has no difficulty dismissing this argument.  The Complaint is well-organized,
easy to follow, and clearly sufficient under Rule 8.  Further, the Court notes that
Defendant's cited authorities address the heightened pleading standard applicable to
claims of fraud or mistake under Rule 9(b) and thus are inapposite here.  (*See id.* at 13).
Accordingly, the Court denies Defendant's motion to dismiss under Rule 8.  *See Iconix
Brand Grp., Inc.* v. *Bongo Apparel, Inc.*, No. 06 Civ. 8195 (DLC), 2008 WL 2695090, at *3
(S.D.N.Y. July 8, 2008) (rejecting a similar argument for substantially the same
reasons).

*Educ.*, 741 F. App'x 827, 829 (2d Cir. 2018) (summary order).[5]  Here, Lavazza

alleges that Defendant violated three provisions of the Agreement: (i) the

payment provision; (ii) the exclusive use obligation; and (iii) the confidentiality

provision.  (Compl. ¶¶ 113-120 (payment); *id.* at ¶¶ 126-133 (exclusive use); *id.*

at ¶¶ 185-193 (confidentiality)).  As the following sections will explain, the

Court finds that Lavazza has plausibly alleged breaches of all three provisions.

### i.      Lavazza Plausibly Alleges a Breach of the Payment Provision

Lavazza's first breach of contract claim alleges that Defendant breached

the Agreement by failing to pay invoices totaling $452,974.64.  (Compl. ¶ 120).

Defendant moves to dismiss the claim on the basis that it seeks consequential

damages that are barred under the Agreement.  (Def. Br. 14-15; *see also*

Agreement, Art. 13).  Lavazza concedes that the Agreement precludes

consequential damages, but argues that the claim is permissible because it

seeks both consequential and non-consequential damages.  (Pl. Opp. 16-17).

The Court sustains Lavazza's claim.  "[A] motion to dismiss is addressed

to a 'claim' — not to a form of damages."  *N.Y. by James* v. *Pa. Higher Educ.*

*Assistance Agency*, No. 19 Civ. 9155 (ER), 2020 WL 2097640, at *18 (S.D.N.Y.

May 1, 2020) (quoting *Amusement Indus., Inc.* v. *Stern*, 693 F. Supp. 2d 301,

---

[5]      Because the parties both agreed to a New York choice-of-law provision (*see* Agreement
§ 16.1) and briefed their arguments with the assumption that New York law applies, the
Court evaluates Plaintiffs' contract and tort claims under New York law.  *See Krumme* v.
*Westpoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) (finding that the parties'
"implied consent … is sufficient to establish choice of law"); *see also Valentini* v. *Grp.*
*Health Inc.*, No. 20 Civ. 9526 (JPC), 2021 WL 2444649, at *6 (S.D.N.Y. June 15, 2021)
("The parties do not dispute that New York law applies in this case, and the Court
accordingly applies that law.").

318 (S.D.N.Y. 2010)).  Because Defendant's motion challenges only the form of damages that Lavazza is seeking, and not an element of its claim, the Court finds that Lavazza has stated a claim for breach of contract based on Defendant's alleged failure to pay invoices for products it purchased from Lavazza.  *See Somnia, Inc.* v. *Change Healthcare Tech. Enabled Servs., LLC*, No. 19 Civ. 08983 (PMH), 2021 WL 639529, at *3 n.5 (S.D.N.Y. Feb. 16, 2021) (declining to address at motion to dismiss stage defendants' argument that breach of contract claim should be dismissed because plaintiff was barred from recovering consequential damages under relevant agreement).

### ii. Lavazza Plausibly Alleges a Breach of the Exclusive Use Provision

Lavazza's second breach of contract claim alleges that Defendant breached the Agreement's exclusive-use provision.  (Compl. ¶¶ 126-133).  That provision provides that Lavazza's equipment "is for the exclusive use of Lavazza Products" and charged Defendant with "advis[ing] Lavazza if any customer is using a competitive product with Lavazza" equipment.  (Agreement § 10.3). Lavazza alleges that Defendant breached the provision by "marketing and selling competitor coffee products to be used in" Lavazza's equipment.  (Compl. ¶ 130).  In response, Defendant argues that Lavazza fails to allege a breach of the Agreement because Defendant's alleged breaches occurred after the Agreement — and thus the exclusive use provision — expired.  (Def. Br. 15-16).

The Court finds that Lavazza has plausibly alleged a breach of the Agreement's exclusive-use provision.  Although Plaintiffs do not identify the exact dates when Defendant is alleged to have breached this provision of the

contract, the Complaint alleges that Defendant's breach occurred on or around

March 10, 2020 — the date the Agreement expired.  (Compl. ¶ 58).  Lavazza

alleges in particular that Defendant marketed competitors' coffee products to

Florida customers who had entered into equipment loan agreements with

Lavazza, including a restaurant in Key West (*id.* at ¶ 62), a resort and spa in

Naples (*id.* at ¶ 63), a hotel in Gainesville (*id.*), and a bakery in West Palm

Beach (*id.*).  When considered in their full context, and under the deferential

standard of review owed at this stage of the litigation, Lavazza's allegations are

sufficient to state a plausible claim of breach of the Agreement's exclusive-use

provision.

Defendant's argument concerning the timing of the alleged breaches is

unpersuasive.  Defendant seeks to dismiss Lavazza's claim based on the

Complaint's allegation that "starting at the latest around the time of the

expiration of the [Agreement], [Defendant] began selling competitor coffee

products." (Def. Br. 15 (quoting Compl. ¶ 70)).  But Defendant's quote is

plucked from a separate section of the Complaint discussing Lavazza's unfair

competition and contributory infringement claims.  (*See id.*).  In the breach of

contract section, by contrast, Lavazza clearly alleges that Defendant breached

the exclusive-use provision "since *and before* the date by which the" Agreement

terminated.  (Compl. ¶ 58 (emphasis added)).  Although Lavazza does not allege

the exact date when these breaches occurred, its failure to do so is not fatal at

this state of the litigation.  *See Comfort Inn Oceanside* v. *Hertz Corp.*, No. 11

Civ. 1534 (JG) (JMA), 2011 WL 5238658, at *6 n.10 (E.D.N.Y. Nov. 1, 2011)

(stating that plaintiff "need not allege the exact date of the breach" at motion to dismiss stage); *see also Bell* v. *Manhattan Motorcars, Inc.*, No. 06 Civ. 4972 (GBD), 2008 WL 2971804, at *2 (S.D.N.Y. Aug. 4, 2008) (declining to dismiss breach of contract claim as time-barred where plaintiff did not allege exact date of breach).  Accordingly, the Court rejects Defendant's argument and sustains Lavazza's claim for breach of contract based on Defendant's breach of the Agreement's exclusive-use provision.

### iii.    Lavazza Plausibly Alleges a Breach of the Confidentiality Provision

Lavazza's third breach of contract claim alleges that Defendant breached the Agreement's confidentiality provision.  (Compl. ¶¶ 185-193).  By operation of that provision, Defendant was bound not to disclose, "during the Term of [the] Agreement or thereafter, … any Confidential Information to any third parties" without Lavazza's permission.  (Agreement § 12.2).  The Agreement defined "Confidential Information" as "including, but not limited to, information relating to the manufacturing cost of the Products, the marketing and sales campaigns for the Products, research and development, the distribution network in the United States, and the financial, business or other affairs of Lavazza and [Defendant] and their suppliers, shareholders, affiliates, Distributors and agents."  (*Id.* at § 12.1).

The parties dispute whether Defendant violated the Agreement's confidentiality provisions by disclosing "the differences (by percentage and otherwise) in pricing for Products as container orders versus warehouse orders."  (Compl. ¶ 107).  Lavazza argues that Defendant's disclosure of this

35

information violated the confidentiality provision by revealing its "manufacturing cost, research and development of rejuvenated products, and Lavazza's financial affairs." (Pl. Opp. 27).  Defendant responds that its disclosure did not violate the confidentiality provision because it revealed only non-confidential pricing information.  (Def. Br. 28).

The Court finds that Lavazza's pricing information plausibly falls within the Agreement's confidentiality provisions.  "The primary objective in contract interpretation is to give effect to the intent of the contracting parties 'as revealed by the language they chose to use.'"  *Even St. Prods., Ltd.* v. *Shkat Arrow Hafer & Weber, LLP*, 643 F. Supp. 2d 317, 324 (S.D.N.Y. 2008) (quoting *Sayers* v. *Rochester Tel. Corp. Supplemental Mgmt. Pension Plan,* 7 F.3d 1091, 1094 (2d Cir. 1993)).  Here, Lavazza and Defendant both understood that they would "be privy to confidential and proprietary information of the other party" as a result of their relationship under the Agreement.  (Agreement § 12.1).  In recognition of that fact, the parties agreed to a broad confidentiality provision, which prohibited both parties from disseminating the other's "financial, business or other affairs[.]"  (*Id.*).  Given the parties' broad definition of confidential information, it is plausible that the Agreement barred Defendant from releasing the prices of — and, as a result, the differences in price between — Lavazza's container and warehouse orders.  Accordingly, Lavazza

has plausibly alleged that Defendant violated the Agreement's confidentiality provision by releasing Lavazza's pricing information.[6]

### b. The Court Dismisses Lavazza's Claim for Account Stated

The Court finds next that Lavazza's claim for account stated is duplicative of its breach of contract claim because both claims arise out of the same facts and seek the same damages. "Two claims are duplicative of one another if they arise from the same facts ... and do not allege distinct damages." *NetJets Aviation, Inc.* v. *LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) (internal quotation marks omitted). Here, Lavazza alleges under both causes of action that it provided Defendant with invoices stating that Defendant owed $452,974.64 for products it ordered from Lavazza and that Defendant failed to pay the invoices. (*Compare* Compl. ¶ 120 (breach of contract), *with id.* at ¶ 125 (account stated)). "It is well established that 'a claim for an account stated may not be utilized simply as another means to attempt to collect under a disputed contract.'" *Murray Eng'g P.C.* v. *Remke*, No. 17 Civ. 6267 (KPF), 2018 WL 3773991, at *10 (S.D.N.Y. Aug. 9, 2018) (quoting *Media Tenor Int'l AG* v. *Medco Health Solutions, Inc.,* No. 13 Civ. 7223 (DLC), 2014 WL 2933215, at *8 (S.D.N.Y. June 27, 2014)). Accordingly, the Court grants Defendant's motion to dismiss Lavazza's claim for account stated.

---

[6]     Defendant raises an additional argument that Lavazza's claim must be dismissed because Lavazza's pricing information was already in the public domain when Defendant released it. (Def. Br. 28). Defendant's assertion, which is not supported by the Complaint or any other evidence properly before the Court, raises an issue of fact that cannot be resolved at the motion to dismiss stage.

### c.   The Court Dismisses Lavazza's Claim for Tortious Interference with Contract

The Court similarly finds that Lavazza's claim for tortious interference is duplicative of its breach of contract claim because both claims seek to hold Defendant liable for its alleged breach of the Agreement's exclusive-use provision.  (Compl. ¶ 69 (asserting that, as a result of Defendant's coordinated effort to market and sell competitors' coffee products, "in addition to breaching its own ongoing obligations under Article of the [Agreement], Defendant … tortiously and intentionally interfered with Lavazza's contractual relationships")).  Indeed, Lavazza asserts the same factual allegations in support of (*id.* at ¶¶ 58-69), and seeks the same remedies under (*id.* at ¶ 133 (breach of contract), ¶ 144 (tortious interference), both causes of action.

"As a general rule, tortious interference claims that are duplicative of contract claims are precluded."  *Choquette* v. *Motor Info. Sys., Inc.*, No. 15 Civ. 9338 (VEC), 2017 WL 3309730, at *6 (S.D.N.Y. Aug. 2, 2017).  That rule "logically appl[ies] where a plaintiff seeks to assert a tortious-interference claim against the same party that has allegedly breached its contract, and where the plaintiff's tort allegations are based on the same conduct as that which gave rise to the alleged contract breach."  *Wiederman* v. *Spark Energy, Inc.*, No. 19 Civ. 4564 (GBD) (DF), 2020 WL 3965258, at *10 (S.D.N.Y. Mar. 9, 2020), *report and recommendation adopted*, No. 19 Civ. 4564 (PGG), 2020 WL 1862319 (S.D.N.Y. Apr. 14, 2020).  The rule does not apply, however, where "plaintiffs show that their tort claim is based on a duty that springs from circumstances extraneous to and not constituting elements of, the parties' contract."  *Horowitz*

v. *Nat'l Gas & Elec., LLC*, No. 17 Civ. 7742 (JPO), 2018 WL 4572244, at *7 (S.D.N.Y. Sept. 24, 2018) (internal quotation marks and brackets omitted).

In this case, Lavazza has not identified any duty Defendant owed and breached independent of its contractual duties under the Agreement.  In fact, Lavazza alleges that Defendant was under a continuing contractual obligation throughout the period that it tortiously interfered with Lavazza's loan agreements, and that Defendant's breach of that duty supports both claims. (Compl. ¶¶ 60, 66).  Accordingly, the Court dismisses Lavazza's claim for tortious interference with contract.  *See Maricultura Del Norte, S. de R.L. de C.V. v. Umami Sustainable Seafood, Inc.*, 769 F. App'x 44, 55 (2d Cir. 2019) (summary order) (affirming dismissal of tortious interference with contract claim where claim alleged same conduct as breach of contract claim).

### d.    The Court Sustains Luigi's Claims Under the Lanham Act

The Court turns next to Defendant's motion to dismiss Luigi's trademark claims.  Luigi brings these claims under Sections 32 and 43 of the Lanham Act, 15 U.S.C. §§ 1114, 1124, alleging that Defendant (i) committed contributory trademark infringement (Compl. ¶¶ 145-152) and (ii) engaged in unfair competition and passing off (*id.* at ¶¶ 153-161).  Defendant argues that both claims must be dismissed because (i) Luigi fails to allege direct infringement and (ii) Defendant did not intentionally induce Lavazza's customers to infringe on Luigi's trademarks or continue to sell to customers it knew were infringing on the trademarks.  (Def. Br. 19-24).  The Court finds Defendant's arguments unpersuasive and sustains Luigi's trademark claims.

"Contributory trademark infringement is a judicially created doctrine that derives from the common law of torts."  *Tiffany (NJ) Inc.* v. *eBay Inc.*, 600 F.3d 93, 103 (2d Cir. 2010).  "To state a claim for contributory infringement, a plaintiff must allege that defendant either [i] intentionally induced another to infringe a trademark or [ii] continued to supply its product or service to one whom it knew or had reason to know was engaging in trademark infringement."  *Row, Inc.* v. *Hotels*, No. 15 Civ. 4419 (JFK), 2018 WL 3756456, at *5 (S.D.N.Y. July 19, 2018) (internal quotation marks and brackets omitted) (citing *Tiffany (NJ) Inc.*, 600 F.3d at 104).  As "[c]ontributory trademark infringement is predicated on the existence of direct infringement," at least some courts have suggested the Court must find that a plaintiff has alleged a claim of direct trademark infringement before it may find a plausible claim of contributory trademark infringement.  *See Solid 21, Inc.* v. *Richemont N. Am., Inc.*, No. 19 Civ. 1262 (LGS), 2020 WL 3050970, at *7 (S.D.N.Y. June 8, 2020).

In this case, Luigi has plausibly alleged direct trademark infringement and, because the standards are substantially the same, a claim for unfair competition.  "To prevail on a claim of trademark infringement, a plaintiff must show, first, that its mark merits protection, and second, that the defendant's use of a similar mark is likely to cause consumer confusion."  *Brennan's, Inc.* v. *Brennan's Rest., L.L.C.*, 360 F.3d 125, 129 (2d Cir. 2004); *see also Manigault* v. *ABC Inc.*, No. 17 Civ. 7375 (KNF), 2018 WL 5818101, at *3 (S.D.N.Y. Oct. 10, 2018) (observing that the same standard applies to unfair competition claims), *aff'd*, 796 F. App'x 13 (2d Cir. 2019) (summary order).  Luigi has made

both showings.  Because "registration of a federal mark confers upon the owner of the mark a presumption that the owner has the exclusive right to use the mark nationwide," *Patsy's Italian Rest., Inc.* v. *Banas*, 658 F.3d 254, 266 (2d Cir. 2011), Luigi has made the first showing by alleging that its trademarks are federally registered (Compl. ¶ 49).  And because "counterfeit marks are inherently confusing," *Slep-Tone Ent. Corp.* v. *Golf 600 Inc.*, 193 F. Supp. 3d 292, 297 (S.D.N.Y. 2016) (collecting cites), Luigi has made the second showing by alleging that Defendant's customers used Luigi's trademarks to market and sell coffee produced by Lavazza's competitors (Compl. ¶¶ 70-82).

Luigi has also plausibly alleged that Defendant continued to sell products to its customers despite knowing that the customers were infringing on Luigi's trademarks.  In this regard, Luigi alleges that Defendant was aware that its customers had exclusive-use equipment loan agreements with Lavazza by virtue of its own relationship with Lavazza, which entailed supporting Lavazza's loan agreements.  (Compl. ¶ 75).  Furthermore, Luigi alleges that Defendant was aware that several of its customers were infringing on Luigi's trademarks by using the trademarks to sell competitors' coffee (*id.* at ¶¶ 62-65, 71-72), and that Defendant nevertheless continued to sell its products to the infringing customers (*id.* at ¶¶ 74-75).  Luigi's allegations, which rest on Defendant's unique knowledge of Luigi's ownership of the trademarks and the customers' violation of the marks, are sufficient to state a claim for contributory trademark infringement.  *See Slep-Tone Ent. Corp.*, 193 F. Supp. 3d at 298 (granting summary judgment on plaintiff's contributory infringement

claim where defendant's relationship with infringing party provided it with direct knowledge of that party's infringement).

Defendant's argument — that Luigi's claim fails because it is vague and conclusory (Def. Br. 20-21) — overstates the standard at this stage of the case. As discussed above, Luigi has plausibly alleged that (i) Defendant knew its customers were infringing on Luigi's trademarks and (ii) Defendant continued to sell products to the customers despite knowing that they were infringing on Lavazza's trademarks.  (Compl. ¶¶ 70-78).  Luigi includes in the Complaint specific examples of the alleged infringement, including allegations related to two specific cafes.  (*Id.* at ¶¶ 71-73).  These allegations stand above the "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" that courts in this District have found insufficient to state a claim.  *Gym Door Repairs, Inc.* v. *Young Equip. Sales, Inc.*, 206 F. Supp. 3d 869, 895 (S.D.N.Y. 2016) (dismissing claim where plaintiff alleged only that defendant copied trademarked materials and used them "to perform and document the performance of maintenance services … throughout New York State"); *see also Lopez* v. *Bonanza.com, Inc.*, No. 17 Civ. 8493 (LAP), 2019 WL 5199431, at *14 (S.D.N.Y. Sept. 30, 2019) (dismissing contributory infringement claim as conclusory where plaintiff alleged only that defendants "continu[ed] to provide" services to third parties known "to be engaged in infringing activities against Plaintiff's trademarks," but did not allege particular acts that infringed on its trademarks). Accordingly, the Court denies Defendant's motion to dismiss Luigi's contributory infringement and unfair competition claims.

### e.    The Court Sustains Lavazza's Claims for Conversion and Trespass to Chattels

The Court addresses Lavazza's claims for conversion and trespass to chattels together.  Lavazza's claims are predicated on its allegation that Defendant removed coffee machines that Lavazza had loaned to customers as part of its equipment loan program.  (Compl. ¶¶ 83-91).  Defendant moves to dismiss both claims on the basis that (i) Lavazza fails to allege that Defendant exercised dominion or control over the equipment and (ii) its conduct was permitted under the Agreement.  (Def. Br. 24-26).  The Court rejects both of Defendant's arguments and sustains Lavazza's claims.

### i.    Lavazza Plausibly Alleges a Conversion Claim

"To withstand a motion to dismiss in a conversion claim, a plaintiff must allege: [i] the property subject to conversion is a specific identifiable thing; [ii] plaintiff had ownership, possession or control over the property before its conversion; and [iii] defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights."  *DeAngelis* v. *Corzine*, 17 F. Supp. 3d 270, 282 (S.D.N.Y. 2014).  In this case, Defendant disputes whether Lavazza has satisfied the third element and separately argues that Lavazza's claim should be dismissed as duplicative of its claim for breach of contract.  (Def. Br. 16, 24).

Here, Lavazza has plausibly alleged that Defendant exercised unauthorized dominion or control over its equipment.  Lavazza alleges that Defendant "unilaterally … removed Lavazza equipment from customers' premises, held the equipment in [Defendant's] warehouse, and refused during a

43

key period of time to identify to Lavazza the customers from whom [Defendant] took the equipment." (Compl. ¶ 83). Lavazza asserts that Defendant engaged in this behavior in several cities throughout Florida, including Key West, Lake Buena Vista, Gainesville, and Doral (*id.* at ¶ 89), and that Defendant ultimately acquired "141 of Lavazza's coffee machines" (*id.* at ¶ 85). Lavazza alleges that Defendant "had no authority or consent from Lavazza to remove Lavazza's property from the customers' premises, much less to take and hold possession of the equipment at [Defendant's] warehouse." (*Id.*).

Defendant's arguments in opposition are unpersuasive. Defendant argues that the Agreement charged it with preventing infringement of Luigi's trademarks and that, as a consequence of that responsibility, Defendant "had authority — or, at a minimum, justification — to remove the equipment to prevent such infringement." (Def. Br. 25). But Defendant does not point to a provision in the Agreement expressly authorizing it to take and hold Lavazza equipment, and then refuse to notify Lavazza of which equipment it took and from whom. Defendant further argues that it did not exercise control over the equipment, because "Lavazza was able to take [it] back at any time." (*Id.*). This argument, however, is at odds with the Complaint, which alleges that Lavazza could not access the equipment because Defendant did not inform Lavazza that it had taken the equipment to its warehouse. (Compl. ¶ 165). The Court may not substitute Defendant's assertion for the Complaint's well-pleaded allegations.

The Court also rejects Defendant's argument that Lavazza's conversion claim must be dismissed as duplicative of its breach of contract claim. (Def. Br. 17). As stated earlier, "[t]wo claims are duplicative of one another if they arise from the same facts ... and do not allege distinct damages." *NetJets Aviation, Inc.*, 537 F.3d at 175 (internal quotation marks omitted). Here, Lavazza's conversion claim and breach of contract claim arise out of different facts and allege different injuries. Lavazza's conversion claim alleges that Defendant "improperly exercised dominion and control over [Lavazza's equipment] ... by decommissioning over 140 Lavazza coffee machines at the premises of over 140 customers, taking possession of the coffee machines, and transporting them off-site to" Defendant's warehouse. (Compl. ¶ 164). Although Defendant attempts to recharacterize Lavazza's allegations as stating a claim for a breach of Defendant's obligation to notify Lavazza of any infringement of Lavazza's trademarks (Def. Br. 17 (citing Compl. ¶ 20)), Lavazza plainly alleges that it suffered injuries separate and apart from any potential contractual injury, including the loss of its ability to use the coffee equipment (Compl. ¶ 170). Accordingly, Court denies Defendant's motion to dismiss Lavazza's conversion claim.

### ii. Lavazza's Plausibly Alleges a Trespass to Chattels Claim

Lavazza's allegations are also sufficient to state a claim for trespass to chattels. "Under New York Law, [a] trespass to chattel occurs when a party intentionally damages or interferes with the use of property belonging to another. Interference may be accomplished by [i] dispossessing another of the

chattel or [ii] using or intermeddling with a chattel in the possession of another." *Fischkoff* v. *Iovance Biotherapeutics, Inc.*, 339 F. Supp. 3d 408, 416 (S.D.N.Y. 2018) (quoting *Register.com, Inc.* v. *Verio, Inc.*, 356 F.3d 393, 437 (2d Cir. 2004)). "A claim for trespass to chattels overlaps with a claim for conversion: [W]here a defendant merely interfered with plaintiff's property then the cause of action is for trespass, while denial of plaintiff's dominion, rights, or possession is the basis of an action for conversion." *DeAngelis*, 17 F. Supp. 3d at 283 (internal quotation marks omitted). Here, as with respect to Lavazza's conversion claim, the Court finds that Lavazza's allegations that Defendant intentionally took possession of Lavazza's coffee equipment without permission plausibly state a claim for trespass to chattels. (Compl. ¶¶ 172-178).

Neither of Defendant's contrary arguments compels a different result. *First*, Defendant argues that Lavazza's trespass to chattels claim is "judicially estopped" because it is based on the same facts as its conversion claim. (Def. Br. 25). As support, Defendant cites only one state-court decision addressing the motion for summary judgment standard. (*Id.* (citing *Calastri* v. *Overlock*, 5 N.Y.S.3d 24 (1st Dep't 2015))). This Court has not found any decisions dismissing claims for trespass to chattels as duplicative of claims for conversion at the motion to dismiss stage. The Court has, by contrast, found decisions permitting both types of claims to proceed. *See, e.g.*, *DeAngelis*, 17 F. Supp. 3d at 283 (explaining that "[b]ecause the elements of a trespass-to-chattels claim are substantially similar to the elements of a conversion claim, the Court applies the same analysis" to both claims, and denying motion to

46

dismiss as to certain defendants); *Baron* v. *Suissa*, 87 N.Y.S.3d 893, 894 (2d Dep't 2018) (affirming denial of motion to dismiss complaint alleging claims of both conversion and trespass to chattels).

*Second*, Defendant argues that Lavazza's trespass to chattels claim fails because it does not "plead harm suffered as a result of [Defendant's] alleged conduct" beyond a "conclusory allegation" that there was "damage" to Lavazza's equipment. (Def. Br. 25-26). Irrespective of whether Lavazza's allegation is conclusory, Defendant's argument fails because it ignores the applicable standard. As the Second Circuit has explained, "courts have drawn a distinction between interference by dispossession, which does not require a showing of actual damages, and interference by unauthorized use or intermeddling which requires a showing of actual damages." *Register.com, Inc.*, 356 F.3d at 437 (internal citations omitted). Here, Lavazza need not plead damages to the equipment in this case because it alleges that Defendant dispossessed it of its equipment. (Compl. ¶ 177). Accordingly, the Court denies Defendant's motion to dismiss Lavazza's claim for trespass to chattels.

### f.   The Court Sustains Lavazza's Claim for Defamation

Lastly, the Court addresses Defendant's motion to dismiss Lavazza's defamation claim. To state a claim of defamation under New York law, a plaintiff must allege: "[i] a defamatory statement of fact about the plaintiff; [ii] publication to a third party; [iii] fault by the defendant; [iv] falsity of the statement; and [v] special damages or *per se* actionability." *Oakley* v. *Dolan*, 833 F. App'x 896, 899 (2d Cir. 2020) (summary order). "Although a jury

determines if a plaintiff has been defamed, whether particular words are defamatory presents a legal question to be resolved by the courts in the first instance." *Ganske* v. *Mensch*, 480 F. Supp. 3d 542, 551 (S.D.N.Y. 2020) (internal quotation marks and alterations omitted).

Lavazza alleges that Defendant defamed it by falsely stating to numerous customers that Lavazza had raised its prices multiple times at the height of the COVID-19 pandemic. (Compl. ¶¶ 179-184; *see also id.* at ¶¶ 92-104). Defendant argues that Lavazza's claim fails for multiple reasons: (i) Defendant's alleged statements were not defamatory; (ii) Defendant did not publish the statements; (iii) Lavazza fails to allege either defamation *per se* or special damages; (iv) the statements were privileged; and (v) the claim is duplicative of Lavazza's breach of contract claim. (Def. Br. 26-27). The Court addresses Defendant's arguments in turn, and ultimately concludes that Lavazza has stated a plausible claim of defamation.

### i.    Defendant's Statements Are Reasonably Susceptible of a Defamatory Meaning

The Court begins by considering whether Defendant's alleged statements are reasonably susceptible of a defamatory meaning. "At the motion to dismiss stage, the court must decide whether the statements, considered in the context of the entire publication, are reasonably susceptible of a defamatory connotation, such that the issue is worthy of submission to a jury." *Kesner* v. *Dow Jones & Co., Inc.*, 515 F. Supp. 3d 149, 170 (S.D.N.Y. 2021) (internal quotation marks omitted). "Not all (or even most) maligning remarks can be considered defamatory." *Chau* v. *Lewis*, 771 F.3d 118, 127 (2d Cir. 2014). "A

defamatory statement is one that exposes an individual to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation or disgrace, or induces an evil opinion of one in the minds of right-thinking persons, and deprives one of confidence and friendly intercourse in society." *Idema* v. *Wager*, 29 F. App'x 676, 678 (2d Cir. 2002) (summary order) (internal quotation marks and alterations omitted).

Here, Lavazza alleges that Defendant made multiple defamatory statements between July and August 2020. (Compl. ¶ 180). In July 2020, for example, Lavazza alleges that Defendant distributed to its customers a list of price increases that stated that Defendant "had received an increase from Lavazza Coffee effective July 1st 2020" and, further, that the increase was "the third increase [Defendant] received in just under 1 year." (*Id.* at ¶ 94). Similarly, in August 2020, Lavazza alleges that Defendant circulated a letter to its customers that stated that "[b]etween August 2019 and May 2020, Lavazza imposed four significant price increases for its Products" and claimed that "Lavazza's conduct was outrageous; particularly under the most challenging environment that perhaps any of us have ever worked." (*Id.* at ¶ 95). In addition, Lavazza alleges that Defendant made several similar statements to at least two customers in Florida. (*Id.* at ¶¶ 97-99). Lavazza alleges that each of Defendant's statements is false, and that by repeatedly making such false statements, Defendant harmed Lavazza's reputation with its customers and caused it to lose business and market share in Florida. (*Id.* at ¶¶ 101-102).

Defendant's statements representing that Lavazza had increased its prices, when considered in their full context, are reasonably susceptible of a defamatory meaning.  As alleged, Defendant made the statements at the height of the COVID-19 pandemic to customers who were deciding whether to purchase coffee products from Lavazza or one of its competitors.  (Compl. ¶¶ 95, 102).  In this context, Defendant's statements plausibly could have led customers to avoid purchasing Lavazza's products and hold Lavazza in contempt for its decision to raise prices in the midst of a pandemic.  *Cf. Galanos* v. *Cifone*, 923 N.Y.S.2d 600, 602 (2d Dep't 2011) (concluding that statement that reasonable reader would interpret as "merely a rhetorical flourish intended to convince the recipient to do business with the defendants, not an assertion of fact" was insufficient to support defamation claim).

### ii.  Lavazza Has Adequately Pleaded Publication

The Court finds next that Lavazza has plausibly alleged that Defendant published its defamatory statements to third parties.  As discussed above, Lavazza alleges that Defendant made defamatory statements to numerous customers between July and August 2020.  (Compl. ¶¶ 94-99).  Defendant challenges the specificity of Lavazza's allegations, arguing that Lavazza has failed to identify how Defendant published the statements, who published the statements, and "to which specific customers" the statements were distributed. (Def. Br. 27).  But Lavazza provides each piece of information in sufficient detail to survive Defendant's motion.  For instance, Lavazza alleges that in August 2020, Defendant "circulated and published a letter to … customers

throughout Florida" that stated that "Lavazza imposed four significant price increases for its Products." (Compl. ¶ 95). Lavazza further alleges that Defendant made several similar statements, and provides similar details concerning each alleged statement. (*Id.* at ¶¶ 96-99). Indeed, Lavazza alleges that Defendant's statements circulated widely enough to lead at least one media outlet to ask Lavazza for a comment on its price increases. (*Id.* at ¶ 100). These allegations are sufficiently detailed to "afford defendant sufficient notice of the communications complained of to enable [it] to defend" itself. *Tannerite Sports, LLC* v. *NBCUniversal News Grp., a division of NBCUniversal Media, LLC*, 864 F.3d 236, 251 (2d Cir. 2017).

### iii.     Lavazza Has Adequately Pleaded Defamation *Per Se*

The Court now turns to whether Lavazza has adequately pleaded either special damages or defamation *per se*. "Defamation *per se* absolves a plaintiff from proving special harm where, as is potentially relevant here, a statement tends to injure another in his or her trade, business, or profession.'" *Medcalf* v. *Walsh*, 938 F. Supp. 2d 478, 487 (S.D.N.Y. 2013) (internal quotation marks and alterations omitted). Courts have found that "[w]here a statement impugns the basic integrity or creditworthiness of a business, an action for defamation lies and injury is conclusively presumed." *Collins* v. *Travers Fine Jewels Inc.*, No. 16 Civ. 3780 (SN), 2017 WL 1184305, at *3 (S.D.N.Y. Mar. 29, 2017).

Here, for many of the same reasons that were just discussed, the Court finds that Lavazza has plausibly alleged that Defendant's statements that Lavazza had consistently raised the prices it charges for its products injured

Lavazza in its trade.  In the context of the COVID-19 pandemic, Defendant's statements could be interpreted by a reasonable customer as impugning Lavazza's business integrity by suggesting that it, in contrast with other coffee manufacturers, was willing to raise prices during a global pandemic.  Indeed, Lavazza alleges that Defendant's statements affected "the confidence of the public in Lavazza and drove customers away" (Compl. ¶ 101), and that the statements have "caused, and will continue to cause, Lavazza to lose customers and market share in Florida" (*id.* at ¶ 102).  Defendant's statements are sufficiently targeted at Lavazza's integrity and reputation in the relevant business community to support Lavazza's claim of defamation *per se*.  *See Wexler* v. *Allegion (UK) Ltd.*, No. 16 Civ. 2252 (ER), 2018 WL 1626346, at *10 (S.D.N.Y. Mar. 30, 2018) (finding statements "calling into question Wexler's character and the quality of his products" sufficient to state claim for defamation *per se*); *see also Celle* v. *Filipino Reporter Enters. Inc.*, 209 F.3d 163, 185 (2d Cir. 2000) (affirming district court's finding of defamation *per se* where statement could undermine plaintiff's position in his professional community and "leave readers with the conclusion that he abused his position").

### iv.    Defendant's Statements Are Not Privileged

Defendant's argument that it cannot be held liable because its statements are privileged misses the mark.  A qualified privilege "extends to a communication made by one person to another upon a subject in which both have an interest."  *Liberman* v. *Gelstein*, 80 N.Y.2d 429, 437 (1992) (internal quotation marks omitted).  Where it applies, the privilege "encompasses a

defamatory communication on any subject matter in which the party communicating has an interest made to a person having a corresponding interest." *Chandok* v. *Klessig*, 632 F.3d 803, 815 (2d Cir. 2011) (internal quotation marks and alterations omitted). Here, Defendant was attempting to sell coffee products to the customers that received the allegedly defamatory remarks. (Compl. ¶¶ 94-104). Such a relationship does not constitute a common interest within the meaning of the qualified privilege. *See Chamilia, LLC* v. *Pandora Jewelry, LLC*, No. 04 Civ. 6017 (KMK), 2007 WL 2781246, at *13 (S.D.N.Y. Sept. 24, 2007) (finding that statements that "did not further an existing business interest of Defendant other than dissuading potential customers from dealing with a rival" were not privileged and noting that "[i]f such an interest was sufficient to defeat a defamation claim, businesses would be free to defame their competitors without consequence").[7]

### v.       Lavazza's Defamation Claim Is Not Duplicative

Defendant's final argument — that Lavazza's defamation claim is duplicative of its claim for breach of the Agreement's confidentiality provision

---

[7]       Even if the Court were to conclude that Defendant's statements were privileged, Lavazza has sufficiently alleged that Defendant made its statements with malice. "At the pleadings stage, a plaintiff can overcome the common interest privilege by alleging that the defamatory statement was motivated solely by common law or constitutional malice." *Thai* v. *Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 330 (S.D.N.Y. 2010) (internal alterations omitted). "Malice includes spite, ill will, knowledge that the statements are false or reckless disregard as to whether they are false." *Travelex Currency Servs., Inc.* v. *Puente Enters., Inc.*, No. 18 Civ. 1736 (ER), 2019 WL 1259102, at *10 (S.D.N.Y. Mar. 19, 2019) (quoting *Broyles* v. *J.P. Morgan Chase & Co.*, No. 08 Civ. 3391 (WHP), 2010 WL 815123, at *5 (S.D.N.Y. Mar. 8, 2010)). Here, Lavazza alleges that Defendant knew its statements were false as evidenced by the fact that the purported price raises were not implemented by Lavazza but rather by Defendant itself. (Compl. ¶¶ 92, 94). Thus, the Court finds that Lavazza's defamation claim should proceed regardless of whether Defendant could demonstrate a privileged common interest with its customers.

— also comes up short.  As discussed earlier, Lavazza's breach of contract claim alleges that Defendant shared confidential information related to Lavazza's cost of fulfilling different types of shipping orders in violation of the Agreement's confidentiality provisions.  (Compl. ¶ 187).  By contrast, Lavazza's defamation claim alleges that Defendant falsely stated on several occasions to Lavazza's customers that Lavazza had raised its prices.  (*Id.* at ¶ 180).  The two claims thus do not "arise from the same facts" and are not duplicative.  *NetJets Aviation, Inc.*, 537 F.3d at 175.

## CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's motion to dismiss under Rule 12(b)(2) and its motion to transfer venue under 28 U.S.C. § 1404.  The Court GRANTS Defendant's motion to dismiss under Rule 12(b)(6) with respect to Lavazza's claims for (i) account stated and (ii) tortious interference with contract, and DENIES the motion with respect to Plaintiffs' claims for (i) breach of the Agreement's payment provision; (ii) breach of the Agreement's exclusive-use provision; (iii) breach of the Agreement's confidentiality provision; (iv) contributory trademark infringement; (v) unfair competition; (vi) conversion; (vii) trespass to chattels; and (viii) defamation.

The parties are hereby ORDERED to submit a revised Case Management Plan on or before **January 3, 2022**.  Additionally, Defendant is hereby ORDERED to file its Answer to the Complaint on or before **January 3, 2022**.

54

The Clerk of Court is directed to terminate the motion at docket entry 28.

SO ORDERED.

Dated:      December 10, 2021
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge